**Reversed and Dismissed and Opinion Filed September 8, 2021**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-20-00376-CV**

**THE UNIVERSITY OF TEXAS AT DALLAS, Appellant**

**V.**

**RICHARD J. ADDANTE, PH.D., Appellee**

**On Appeal from the County Court at Law No. 1**
**Dallas County, Texas**
**Trial Court Cause No. CC-17-03714-A**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III[1], and Goldstein
Opinion by Justice Pedersen, III

Richard Addante, Ph.D., filed suit against the University of Texas at Dallas

("UTD"), alleging retaliation claims under the Texas Labor Code. UTD filed a plea

to the jurisdiction, which the trial court heard on November 21, 2019. The trial court

denied UTD's plea. This interlocutory appeal followed.

---

[1] Justice Carlyle participated in the oral argument in place of Justice Pedersen. Justice Pedersen authors this opinion after having reviewed the briefs of the parties, the oral argument, and the record before the Court.

After reviewing the parties' briefs and the record, we reverse the trial court's order denying UTD's plea to the jurisdiction. We dismiss Addante's suit for lack of subject-matter jurisdiction.

## I.     BACKGROUND

### A. Harassment Complaint

Addante worked at UTD from 2011 to 2016 and held two positions. From October 1, 2011, to August 31, 2014, Addante worked as a postdoctoral research associate in UTD's Center for Vital Longevity ("CVL"). During that time, Dr. Michael Rugg served as a professor and co-director of the CVL. On April 10, 2014, Addante made an anonymous complaint through the UTD ethics and compliance hotline, alleging that Rugg engaged in sexual harassment in the CVL. Marco Mendoza, who served as UTD's Director of Institutional Equity, received the complaint and investigated Addante's allegations. Mendoza ultimately determined there was insufficient evidence to find Rugg had violated UTD's Sexual Harassment Policy: Rugg denied the allegations and the victims Addante identified in his anonymous complaint did not support Addante's allegations. Mendoza memorialized the results of his investigation in a July 2014 report, which listed the

complainant as anonymous and did not otherwise name or identify Addante as the complainant.

**B. Salary and Reappointment Dispute**

Addante's initial postdoctoral research associate salary from October 1, 2011, to the end of September 2013 was $3,750 per month, totaling $45,000 per year. From October 1, 2013, to August 31, 2014, Addante's salary was $3,937.71 per month, totaling $43,314.81 for those eleven months. On July 3, 2014, UTD offered Addante a Senior Lecturer I position in the School of Behavioral and Brain Sciences ("BBS") with approval from then-Provost Dr. Hobson Wildenthal. Addante worked in the BBS from September 1, 2014 to May 31, 2015, for a salary of $50,000, plus $5,500 additional compensation for teaching in the Summer 2015 term.

In Fall 2014, Addante received negative course and instructor scores from student evaluations. In January 2015, Wildenthal, then-Executive Vice-President and Provost of UTD, reviewed Addante's evaluation data. Wildenthal had not reviewed Addante's evaluations before this January 2015 review. Out of concern, Wildenthal met with then-Dean Bert Moore to discuss Addante's hire and teaching experience. After this discussion, Wildenthal instructed Moore to not reappoint Addante for the 2015–2016 academic year. Thereafter, the BBS provided Wildenthal with a list of proposed merit increases for the 2015–2016 academic year; this list included Addante and proposed for him to receive a 2% merit raise ("merit raise"). As he had instructed Moore to not reappoint Addante, Wildenthal expected Addante

–3–

would not be hired for the 2015–2016 academic year; Wildenthal rejected Addante's proposed 2% merit raise.

Despite Wildenthal's decision to deny Addante's reappointment and 2% merit raise, Inga Musselman, serving as UTD's Senior Vice Provost and Acting Provost, sent Addante an appointment letter on August 1, 2015—which offered him reappointment as a BBS Senior Lecturer I with a salary of $50,000 for the 2015-2016 academic year. Addante accepted the offer, and UTD thereby reappointed Addante. However, Addante raised concerns in correspondence to Musselman (i) about the amount of his compensation, comparing his compensation to that of Dr. Eva Ladow, and (ii) that he had not received the proposed 2% merit raise (Addante's Letter). On September 4, 2015, Wildenthal sent Addante a letter, which read, in part, as follows:

> You recently communicated with Acting Provost Musselman raising issues about your FY 16 compensation. Since Dr. Musselman had no role in setting your compensation, which occurred under my management I am answering your letter.
>
> In reviewing the evaluations of classroom instruction last year, I *noted the unsatisfactory results recorded for your teaching performance*. I *inquired as to the genesis of your employment and was informed that it was a temporary expedient, provided more or less on compassionate grounds in order for you to have a better chance of obtaining regular employment subsequent to the completion of your post-doctoral appointment.*
>
> *I expressed my lack of support for this sort of process for providing instruction for our students . . . and was given to understand that your appointment would not be renewed. As is normal for individuals*

–4–

*programmed not to be employed for the coming year, I did not allocate a salary adjustment for your name.*

The fact that you appear to again be an employee for FY 16 I regard as an administrative oversight or failure. You should use this fortuitous (for you) accident of an additional year of UT Dallas employment to good advantage and succeed in finding regular employment elsewhere after May 31, 2016.

(emphasis added). Addante taught at UTD for the 2015-2016 academic year until the academic year ended on May 31, 2016. During this period, Addante earned $50,000 in salary plus an additional $4,000 attributed to a salary adjustment.

## C. Charge of Discrimination and Procedural History

On December 9, 2015, Addante filed a Charge of Discrimination through the Texas Workforce Commission's Civil Rights Division to the Equal Employment Opportunity Commission ("EEOC"). Under the section labelled "Date(s) Discrimination Took Place," Addante wrote:



Under the "particulars" section of Addante's Charge of Discrimination, Addante wrote, in part:

Employer discriminated and retaliated against me on the basis of sex and for opposing, reporting, and acting as a witness in an investigation of sexual harassment and retaliation, in violation of Title XII of the Civil Rights Act of 1964 and the Texas Labor Code.

Addante further attached a description of events dating from December 14, 2012, to December 8, 2015.[2]

On July 11, 2017, Addante filed suit against UTD alleging:

UTD violated Chapter 21 of the Texas Labor Code by treating Dr. Addante differently on the basis of his gender and in retaliation for reporting and opposing sex discrimination and participating in an Equal Employment Opportunity Commission proceeding.

UTD answered and filed a plea to the jurisdiction. After more than two years of litigation, including an (i) objection to the initial hearing setting, (ii) an order from the trial court to compel discovery, and (iii) a nonsuit of Addante's gender discrimination claim, the trial court heard UTD's plea to the jurisdiction on November 21, 2019.[3] On February 25, 2020, the trial court entered an Order Denying Defendant's Plea to the Jurisdiction, which "in all things" denied UTD's plea to the jurisdiction. This interlocutory appeal followed. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II.    ISSUES RAISED ON APPEAL

UTD raises the following three issues on appeal:

1. Dr. Addante did not establish a prima facie case of retaliation when there is no direct evidence of retaliation, the employment decisionmaker had no knowledge Dr. Addante had engaged in a protected activity at the time of any adverse employment action, and

---

[2] Although the Charge of Discrimination "noted" April 10, 2015, as the earliest date of the alleged discrimination, it included no separate or distinct entry for what occurred on April 10, 2015.

[3] The appellate record contains no reporter's record of this hearing.

–6–

any alleged adverse employment action was too remote in time to be considered evidence of causation.

2. Alternatively to Issue No. 1, Dr. Addante failed to meet his burden to show his participation in any protected activity was the "but for" cause of any of UTD's employment decisions and rebut each of UTD's legitimate, nonretaliatory reasons for its employment actions and show that each was a pretext for the alleged retaliatory purpose.

3. The trial court erred in overruling UTD's evidentiary objections and improperly considering evidence submitted in opposition to the Plea to the Jurisdiction.

Though not raised as a separate issue, UTD further raises whether Addante's claims are limited by the Texas Commission on Human Rights Act's ("TCHRA") requirement that he exhaust his administrative remedies. Furthermore, both UTD's and Addante's briefing raise the issue of whether Addante has direct evidence of retaliation. We address each of these issues.

### III. STANDARDS OF REVIEW

#### A. Plea to the Jurisdiction

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Subject-matter jurisdiction is never presumed and cannot be waived. *Id.* at 443–44. A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action based on lack of subject-matter jurisdiction without regard to the merits of the claim. *Town of Fairview v. Lawler*, 252 S.W.3d 853, 855–56 (Tex. App.—Dallas 2008, no pet.) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.

–7–

2000)). A trial court's ruling on a plea challenging subject-matter jurisdiction is a question of law and, consequently, reviewed de novo. *City of Dallas v. Redbird Dev. Corp.*, 143 S.W.3d 375, 380 (Tex. App.—Dallas 2004, no pet.) (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)).

A plea to the jurisdiction may challenge either the pleadings or the existence of jurisdictional facts. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004) (citing, inter alia, *Cameron v. Children's Hosp. Med. Ctr.*, 131 F.3d 1167, 1170 (6th Cir. 1997)) ("[W]hether a district court has subject matter jurisdiction is a question for the court, not a jury, to decide, even if the determination requires making factual findings, unless the jurisdictional issue is inextricably bound to the merits of the case."). When, as in this case, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties, when necessary, to resolve the jurisdictional issues raised. *Id.* at 227 (citing *Bland*, 34 S.W.3d at 555). In such case, we are not bound by the plaintiff's factual allegations. *City of Dallas v. Hughes*, 344 S.W.3d 549, 553 (Tex. App.—Dallas 2011, no pet.). This standard mirrors our summary judgment standard under rule 166a of the Texas Rules of Civil Procedure, and it places the burden on the plaintiff to allege facts that affirmatively demonstrate the trial court's jurisdiction. *Miranda*, 133 S.W.3d at 228 (referring to TEX. R. CIV. P. 166a).[4]

---

[4] "In reviewing a summary judgment, we must accept as true evidence favoring the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor." *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510 (Tex. 1995).

The movant on the plea to the jurisdiction has the burden to assert and support its contention, with evidence, that the trial court lacks subject-matter jurisdiction. *City of Dallas v. Heard*, 252 S.W.3d 98, 102 (Tex. App.—Dallas 2008, pet. denied) (citing *Miranda*, 133 S.W.3d at 228). If the movant meets that burden, the plaintiff must raise a material fact issue regarding jurisdiction to survive the plea to the jurisdiction. *Id*. (citing *Miranda*, 133 S.W.3d at 228).[5] In our review, we construe the pleadings liberally in favor of the plaintiff and look to the plaintiff's intent. *Id*. "In doing so, however, we cannot disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018). In TCHRA cases involving a plea to the jurisdiction, "the plaintiff is not put to the ultimate burden of proof but must only raise a fact issue on the existence of illegal intent." *Id*. at 785.

## B. Admissibility of Evidence

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (per curiam). A trial court abuses its discretion when it acts "without reference to any guiding rules and principles"—if it acts arbitrarily or unreasonably. *Downer v. Aquamarine*

---

[5] If the evidence creates a fact question regarding jurisdiction, the trial court cannot grant the plea, and the fact question will be resolved by the factfinder. *City of Dallas v. Mazzaro*, No. 05-20-00103-CV, 2020 WL 6866570, at \*2 (Tex. App.—Dallas Nov. 23, 2020, no pet.) (mem. op.). If the relevant evidence is undisputed or fails to raise a fact issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228.

*Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We will uphold the ruling if there is any legitimate basis in the record to support it. *Ten Hagen Excavating, Inc. v. Castro-Lopez*, 503 S.W.3d 463, 490 (Tex. App.—Dallas 2016, pet. denied). To reverse an erroneous evidentiary ruling, an appellant must both establish error and show that the error probably caused an improper judgment. TEX. R. APP. P. 44.1; *Thawer v. Comm'n for Lawyer Discipline*, 523 S.W.3d 177, 183 (Tex. App.—Dallas 2017, no pet.).

## IV.    TEXAS COMMISSION ON HUMAN RIGHTS ACT

Addante's retaliation suit invokes, and UTD's plea to the jurisdiction is based upon, application of Chapter 21 of the Texas Labor Code, which is commonly referred to as the TCHRA. *See generally Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 502 (Tex. 2012).[6] The TCHRA was enacted, in part, to address the specific evil of discrimination and retaliation in the workplace. *Chatha*, 381 S.W.3d at 504. "One of TCHRA's purposes is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments.'" *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001) (quoting TEX. LABOR CODE ANN. § 21.001).[7]

---

[6] We recognize that the Commission on Human Rights has been replaced with the Texas Workforce Commission's civil rights division. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 798 n.1 (Tex. 2010) (citing TEX. LAB. CODE ANN. § 21.0015). Throughout this opinion, we refer to Chapter 21 of the Texas Labor Code as the TCHRA.

[7] "Therefore, analogous federal statutes and the cases interpreting them guide our reading of the TCHRA." *Quantum Chem. Corp.*, 47 S.W.3d at 476 (citing *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999)).

In the context of retaliation, the TCHRA provides:

> An employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person who, under this chapter:
>
>> (1) opposes a discriminatory practice;
>> (2) makes or files a charge;
>> (3) files a complaint; or
>> (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

TEX. LAB. CODE ANN. § 21.055. "The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (addressing Title VII of the Civil Rights Act of 1964 in the context of victims of retaliation). The Supreme Court further held:

> The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . . . In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"

*Burlington*, 548 U.S. at 67–68 (citing *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (quoting *Washington v. Illinois Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005))).[8] Normally, "petty slights, minor annoyances, and simple lack

---

[8] We have held:

> "Material" employer actions are those "that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." . . . This objective

of good manners" are trivial harms—distinct from materially adverse actions—that will not create such a deterrence as to dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington*, 548 U.S. at 68; *see Alamo Heights*, 544 S.W.3d at 788.

## V.    GOVERNMENTAL IMMUNITY

It is undisputed that UTD is a governmental entity. *See, e.g.*, *Chatha*, 381 S.W.3d at 510 (describing Prairie View A & M University as a governmental entity). Governmental entities are generally immune from suit unless the state consents. *Alamo Heights*, 544 S.W.3d at 770; *see also City of Dallas v. Nkansah*, No. 05-18-00069-CV, 2018 WL 6599025, at *2 (Tex. App.—Dallas Dec. 17, 2018, pet. denied) (mem. op.). "The TCHRA waives immunity [for governmental entities], but only when the plaintiff states a claim for conduct that actually violates the statute." *Alamo Heights*, 544 S.W.3d at 770; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637 (Tex. 2012). The Texas Supreme Court has addressed claims of retaliation against a governmental entity under the TCHRA:

> The elements of a retaliation claim under the TCHRA are jurisdictional in nature because "the Legislature has waived immunity only for those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder."
> . . . .
> To establish a violation, the employee must show that: (1) she engaged in an activity protected by the TCHRA, (2) an adverse employment

---

standard is applied to a fact-specific inquiry "because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters."

*Crutcher v. Dallas Indep. Sch. Dist.*, 410 S.W.3d 487, 493 (Tex. App.—Dallas 2013, no pet.) (quoting *Burlington*, 548 U.S. at 68-69 (2006)).

action occurred, and (3) there exists a causal link between the protected activity and the adverse action.

*San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136 (Tex. 2015) (citations omitted); *see also Lovelace v. Dallas Indep. Sch. Dist.*, No. 05-18-00207-CV, 2019 WL 2723801, at *5 (Tex. App.—Dallas July 1, 2019, no pet.) (mem. op.) (discussing a retaliation claim brought against a school district).

## VI.   DISCUSSION

### A. Whether Addante Exhausted His Administrative Remedies Under TCHRA

As a preliminary matter, we must first address whether Addante complained of UTD's actions within 180 days after the alleged unlawful employment practice occurred. TEX. LABOR CODE ANN. § 21.202; *see also Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (per curiam) ("Texas law requires that a complaint of unlawful employment practices be filed with the Equal Employment Opportunity Commission or the Texas Commission on Human Rights within 180 days after the alleged unlawful employment practice occurred."). In *Gilles-Gonzalez v. University of Texas Southwest Medical Center*, our Court addressed this requirement:

> The exhaustion of administrative remedies is a jurisdictional prerequisite to filing suit for unlawful employment practices. *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (per curiam).
>
> A plaintiff may not recover for "discrete acts of discrimination or retaliation" that occur outside the limitations period. *Nat'l R.R.*

–13–

*Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). The limitations period begins when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition. *Specialty Retailers, Inc.*, 933 S.W.2d at 493; *see also Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012) (*Specialty Retailers, Inc.* is "controlling authority for interpreting when an unlawful employment practice occurs").

In contrast to claims alleging "discrete acts" such as termination, failure to promote, denial of transfer, or refusing to hire, *see Morgan*, 536 U.S. at 114, a plaintiff may also allege a "continuing violation," that is, "unlawful discrimination that 'manifests itself over time, rather than [as] a series of discrete acts.' " [sic] *See Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 808 (Tex. App.—Austin 2009, no pet.) (quoting *Wal-Mart Stores, Inc. v. Davis*, 979 S.W.2d 30, 41–42 (Tex. App.—Austin 1998, pet. denied)).

No. 05-16-00078-CV, 2016 WL 3971411, at *2–3 (Tex. App.—Dallas July 22, 2016, no pet.) (mem. op.).[9]

Here, Addante filed his Charge of Discrimination with the EEOC on December 9, 2015. Thus, any alleged unlawful employment practice must have occurred on or after June 12, 2015—180 days before his Charge of Discrimination. Addante's allegations of any unlawful employment practices that occurred before June 12, 2015, are barred by limitations. *See* TEX. LABOR CODE ANN. § 21.202. The record contains no response from UTD to the EEOC in relation to the Charge of Discrimination. Although Addante's briefing acknowledges that he is barred from using acts prior to June 12, 2015, as the basis of his suit, he nevertheless alleges that

---

[9] *But see Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1852 (2019) (holding that Title VII's charge-filing requirement is not jurisdictional). Nevertheless, as UTD is a governmental entity, the exhaustion of administrative remedies is of jurisdictional cast. *See Fort Bend Cty., Tex.*, 139 S. Ct. at 1850.

he is not barred from using those prior acts as evidence in support of a timely claim. *Nat'l R.R. Passenger Corp.*, 536 U.S. 101, 102 (holding in an analogous analysis under Title VII of the Civil Rights Act of 1964 that "the statute [does not] bar an employee from using the prior acts as background evidence to support a timely claim").

Addante's briefing asserts ten adverse actions from UTD, which he alleges constituted unlawful employment practices:

- harassment by Dr. Rugg,
- termination of employment by Dr. Rugg,
- temporary loss of health insurance,
- refusal to provide reports of investigations,
- singling out by Dr. Wildenthal,
- increased scrutiny over classroom teaching,
- false accusations about classroom teaching,
- refusal to give a merit raise,
- hostile and derogatory letter by Dr. Wildenthal, and
- termination of employment.

Several of these actions occurred before June 12, 2015. Furthermore, the record does not show that Addante's accusations against UTD of "increased scrutiny over classroom teaching" and "false accusations about classroom teaching" constituted materially adverse employment actions. Instead, the record shows that several of Addante's allegations amount to personality conflicts, unfair criticism, heated exchanges, and being micromanaged, which are "petty annoyances, not conduct likely to deter an employee from making a discrimination complaint." *Alamo Heights*, 544 S.W.3d at 789 (citing, *inter alia*, *Burlington*, 548 U.S. at 68;

–15–

*Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 442–43 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1107 (7th Cir. 2012); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009); *Grice v. FMC Techs. Inc.*, 216 F. App'x 401, 404, 407 (5th Cir. 2007)).. That is, the record indicates those allegations are "trivial harms" and not "materially adverse" retaliatory employment action. *See Alamo Heights*, 544 S.W.3d at 788–89.

Nevertheless, the record shows that two of Addante's allegations of adverse action are within § 21.202's limitations period: (i) UTD's non-reappointment of him after the 2015–2016 academic year[10] and (ii) UTD's denial of his request concerning a merit raise.[11] *See* TEX. LABOR CODE ANN. § 21.202. As for those two allegations, we conclude Addante's claims are not barred by the administrative requirements of the TCHRA. *See* TEX. LABOR CODE ANN. § 21.202. We next turn to the evidence in the record of those two alleged violations of the TCHRA.

---

[10] We have found no evidence in the record to suggest that Addante had an expectation of reappointment after the 2015–2016 academic year. There is no evidence in the record of a contract for Addante's employment with UTD.

[11] Although Addante marked UTD's discriminatory actions as "continuing," neither his briefing nor the record show evidence of "continuous" discriminatory or otherwise unlawful activity against Addante. Indeed, the evidence Addante provides to substantiate his claim of UTD's continuous adverse action against him after June 12, 2015, is his own affidavit, in which he concludes, without providing further basis: "Adverse actions against me began immediately after I opposed the unlawful activities and continued, increasing upon each additional protected activity. It started with harassment by Dr. Rugg. It was immediate and continuous through the termination of my employment."

**B. Whether Addante Established His Allegations of TCHRA Violations**

Violations of the TCHRA can be established with two alternative methods of proof: either direct or circumstantial evidence. *Alamo Heights*, 544 S.W.3d at 781; *Mission*, 372 S.W.3d at 634. "In both direct- and circumstantial-evidence cases, the burden of persuasion remains at all times with the employee." *Alamo Heights*, 544 S.W.3d at 782. In *City of Dallas v. Nkansah*, we addressed these alternative methods for establishing a violation of the TCHRA in the context of a retaliation claim:

> The TCHRA prohibits retaliation against an employee for engaging in certain protected activities, such as making a discrimination complaint. . . .
>
> . . . Direct evidence of discrimination is evidence of what the defendant did and said. *Mission*, 372 S.W.3d at 634. It is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption. *Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 653 (Tex. App.—Dallas 2012, no pet.). "[M]otives are often more covert than overt," however, "making direct evidence of forbidden animus hard to come by." *Mission*, 372 S.W.3d at 634. Because direct evidence in these types of cases is often unavailable, an employee can establish discrimination with circumstantial evidence using a three-part, burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Alamo Heights*, 544 S.W.3d at 764; *Mission*, 372 S.W.3d at 634.

2018 WL 6599025, at *2–3 (citations omitted, footnote omitted). Thus, retaliation and discrimination claims use the same burden-shifting analysis. *Id.*; *see also Alamo*

–17–

*Heights*, 544 S.W.3d at 781–82; *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

"The trial court is allowed to conduct a hearing on a plea to the jurisdiction or motion to dismiss for lack of jurisdiction in a manner similar to how it hears a summary judgment motion, and may consider affidavits and other summary judgment-type evidence." *FKM P'ship Ltd. v. Bd. of Regents of Univ. of Hous. Sys.*, 255 S.W.3d 619, 628 (Tex. 2008) (citing *Miranda*, 133 S.W.3d at 227); *see Holmes v. S. Methodist Univ.*, No. 05-11-01178-CV, 2013 WL 1857932, at *3 (Tex. App.—Dallas May 1, 2013, no pet.) (mem. op.) (addressing plea to jurisdiction). "'Unverified documents attached to pleadings are not proper summary judgment evidence. . . . Documents submitted as summary judgment proof must be sworn to or certified.'" *Holmes*, 2013 WL 1857932, at *3 (quoting *Heirs of Del Real v. Eason*, 374 S.W.3d 483, 488 (Tex. App.—Eastland 2012, no pet.) (citations omitted)); *see* TEX. R. CIV. P. 166a(f). Texas Rule of Civil Procedure 166a provides:

> (f) Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. Defects in the form of affidavits or attachments will not be grounds for

–18–

reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend.

TEX. R. CIV. P. 166a. "'[U]nauthenticated or unsworn documents do not constitute competent summary judgment evidence.'" *Holmes*, 2013 WL 1857932, at *3 (quoting *Heirs of Del Real*, 374 S.W.3d at 488).

### i. Direct Evidence of Retaliation

Addante first contends that the record contains direct evidence of UTD's retaliation against him. "Where a plaintiff offers remarks as direct evidence, we apply a four-part test to determine whether they are sufficient to overcome summary judgment." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016) (quoting *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012)). The Fifth Circuit has explained:

> [C]omments are evidence of discrimination only if they are "1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." Comments that do not meet these criteria are considered "stray remarks," and standing alone, are insufficient to defeat summary judgment.

*Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (footnotes omitted). In *Jespersen v. Sweetwater Ranch Apartments*, we held: "If an inference is required for the evidence to be probative as to the employer's discriminatory animus in making the employment decision, the evidence is circumstantial, not direct." *Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 653–54 (Tex. App.—

–19–

Dallas 2012, no pet.) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897–98 (5th Cir. 2002)).

In his argument that the record contains direct evidence from UTD, Addante does not refer us to documents from UTD or testimony from its employees. Addante does not specify the actual statements or documents from UTD upon which he relies. Instead, Addante refers us to statements *he* made in his own declarations:

> UTD's Institutional Chief Audit Executive Toni Stephens and my supervisor, Christa McIntyre, both acknowledged that UTD was retaliating against me.
>
> A year later, when I showed Toni Stephens the letter from UTD President Wildenthal saying that I should be terminated, she acknowledges that UTD was retaliating against me.
>
> My supervisor (Dr. McIntyre) also declared that President Wildenthal was wrong in his threatening letter to me, assuring that I did indeed have a place at UTD for the coming years. She admitted singling me out for classroom audits no other employee was subjected to, and to making false statements about it. She agreed that it is a hostile situation.
>
> Dr. McIntyre says that those were the terms that she was given from UTD's administration. She acknowledged that I "did a good job" and "was doing fine." She acknowledged that her actions toward me constituted "recognized hostility in our industry."

Addante's affidavit does not reveal any basis for the statements he made; that is, the "acknowledgements," "admissions," "assurances," and "agreements" are not substantiated beyond Addante's conclusion that the respective person acknowledged, admitted, assured, or agreed. The admissibility of these statements notwithstanding, the statements contain no information as to what constituted the

–20–

retaliation, when the alleged statements occurred, or what were the related employment decisions. Instead, these statements merely reflect Addante's impression of others' actions. Because our standard for resolving jurisdictional facts in a plea to the jurisdiction mirrors the summary judgment standard,[12] we must conclude these statements are not legally sufficient evidence. *See Vince Poscente Int'l, Inc. v. Compass Bank*, No. 05–11–01645–CV, 2013 WL 1320511, at \*4–5 (Tex. App.—Dallas Mar. 28, 2013, no pet.) (mem. op.) (affidavit that did not affirmatively show basis for affiant's personal knowledge was legally insufficient); *see also Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 884 (Tex. App.—Dallas 2007, no pet.) (affidavit that is conclusory is substantively defective; conclusory affidavits do not raise fact issues).

Furthermore, none of Addante's statements show on their face that an improper criterion served as a basis for UTD's actions denying his reappointment and merit raise. *See Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005) ("We have previously held that statements or documents which show on its face that an improper criterion served as a basis-not necessarily the sole basis, but a basis-for the adverse employment action are direct evidence of discrimination.") (internal quotation omitted). Instead, we must assume Addante correctly knew the

---

[12] *See generally Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991) (per curiam); *Republic Nat'l Leasing Corp. v. Schindler*, 717 S.W.2d 606, 607 (Tex. 1986); *Perez v. Cueto*, 908 S.W.2d 29, 31 (Tex. App.—Houston [14th Dist.] 1995, no writ); *Lection v. Dyll*, 65 S.W.3d 696, 701 (Tex. App.—Dallas 2001, pet. denied).

UTD employees' mental state for these statements "to be probative as to the employer's discriminatory animus in making the employment decision" to not reappoint Addante or to deny his merit raise. *Jespersen*, 390 S.W.3d at 653–54.[13] These statements cannot serve as direct evidence of UTD's retaliation. Having found no other evidence in the record that could serve as direct evidence of Addante's allegations that UTD violated the TCHRA we must conclude the record contains no direct evidence of UTD's retaliation. *See Jackson*, 602 F.3d at 380.[14]

### ii.    Circumstantial Evidence of Retaliation

A plaintiff who proceeds in his retaliation claim with circumstantial evidence—thereby invoking the *McDonnell Douglas* framework—must first demonstrate a prima facie case. *Mission*, 372 S.W.3d at 637. If the plaintiff fails to demonstrate those elements, (i) "the plaintiff never gets the presumption of discrimination and never proves his claim" and (ii) "the court has no jurisdiction and the claim should be dismissed." *Id.* "All elements of a TCHRA circumstantial-evidence claim are, perforce, jurisdictional." *Alamo Heights*, 544 S.W.3d at 783.[15]

---

[13] "It is impossible for a witness to possess personal knowledge of what someone else is thinking." *Fairow v. State*, 943 S.W.2d 895, 899 (Tex. Crim. App. 1997).

[14] During oral argument, Addante argued that Wildenthal's letter was direct evidence of retaliation. However, the letter contains no language or reference to Addante's prior harassment complaint, gender discrimination, or any other alleged retaliatory action. Wildenthal's letter does not show any discriminatory animus without inference or presumption and is therefore not direct evidence of retaliation. *See Nkansah*, 2018 WL 6599025, at *3 (citing *Jespersen*, 390 S.W.3d at 653).

[15] The Texas Supreme Court continued:

> Because a statutory violation is necessary to establish an immunity waiver, jurisdiction and the merits intertwine. And because a circumstantial-evidence case depends on the

If an employee establishes a prima facie case of discrimination under the *McDonnell Douglas* framework, then that employee enjoys a rebuttable presumption of discrimination.[16] *Id.* 782; *Nkansah*, 2018 WL 6599025, at *3 n.2. However, "the employer can defeat this presumption merely by producing evidence of a legitimate, nondiscriminatory reason for the disputed employment action." *Alamo Heights*, 544 S.W.3d at 782 (emphasis added). "Once rebutted, the presumption disappears, and an employee lacking direct evidence cannot prove a statutory violation without evidence that the employer's stated reason is false and a pretext for discrimination." *Alamo Heights*, 544 S.W.3d at 782.

Here, Addante must establish a prima facie case that (i) he engaged in an activity protected by the TCHRA, (ii) an adverse employment action occurred, and (iii) there exists a causal link between the protected activity and the adverse action. *San Antonio Water Sys.*, 461 S.W.3d at 136. Addante's briefing asserts the rule in *Aikens* applies here, to argue that he is not required to show a prima facie case at this stage—before trial on the merits—because UTD asserted legitimate, nondiscriminatory reasons for its employment actions. *See U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) ("Where the defendant has done

_____

*McDonnell Douglas* framework, the burden-shifting scheme *in toto* defines the jurisdictional facts.

*Alamo Heights*, 544 S.W.3d at 783.

[16] "The causation standard for the *McDonnell Douglas* prima-facie-case element is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action." *Alamo Heights*, 544 S.W.3d at 782.

everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether the defendant intentionally discriminated against the plaintiff.") (internal quotation omitted). The Fifth Circuit has "clearly interpreted the rule in *Aikens* to apply to cases that have ***gone to trial***." *Hague v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 560 F. App'x 328, 334 (5th Cir. 2014) (emphasis added); *see Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 607 (5th Cir. 2007); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 224 n.5 (5th Cir. 2000).[17] "There is no authority in this Circuit that would allow the employee's burden of establishing a prima facie case to be extinguished simply because an employer exercises its right to challenge the prima facie case and also proffers a legitimate, nondiscriminatory reason for its decision." *Hague*, 560 F. App'x at 334–35. Accordingly, we decline to apply the rule in *Aikens* to this case at the plea to the jurisdiction stage; Addante must meet his burden to establish a prima facie case. *See id.*

1) <u>Whether Addante Engaged In An Activity Protected By The TCHRA</u>

Addante first asserts that he engaged in the following eight protected activities:

- opposing sexual harassment by Dr. Rugg;
- reporting sexual harassment by Dr. Rugg;

---

[17] *Accord Barnes v. Yellow Freight Sys. Inc.*, 778 F.2d 1096, 1100 (5th Cir. 1985); *Avant v. S. Cent. Bell Tel. Co.*, 716 F.2d 1083, 1086–87 (5th Cir. 1983).

- participating in an investigation of Dr. Rugg;
- opposing retaliation for opposition and reporting sexual harassment;
- reporting retaliation;
- opposing and reporting discrimination;
- participating in an investigation of discrimination and retaliation; and
- opposing and reporting retaliation.

Addante further asserts that he engaged in independent protected activities when he (i) "repeatedly opposed and reported discrimination and retaliation to his superiors and to UTD's investigators and attorneys to the day he was terminated"[18] and (ii) sent correspondence to Musselman—which raised concerns about possible gender discrimination.

The parties agree Addante's 2014 anonymous complaint was a protected activity under the statute. *See* TEX. LAB. CODE ANN. § 21.055(1–2); *see also Alamo Heights*, 544 S.W.3d at 786 ("An employee engages in a protected activity by, among other things, filing an internal complaint, opposing a discriminatory practice, or making a charge of discrimination with the EEOC."). Otherwise, the parties disagree as to whether Addante's remaining assertions constitute engagement in a protected activity.

In support of his first eight enumerated protected activities and his repeated opposition to discrimination and retaliation, Addante first refers us to several portions of his own declarations. However, Addante's declarations (i) are replete

___

[18] There is no evidence in the record that Addante was "terminated" before his work separation from UTD occurred on May 31, 2016—the end of UTD's 2015–2016 academic year.

–25–

with conclusory statements that lack support; (ii) enumerate actions, acknowledgements, and admissions attributed to UTD without support and outside of Addante's personal knowledge; and (iii) provide no competent evidence of when he participated in his claimed protected activities. Addante's declarations, as cited in his briefing,[19] do not raise competent evidence of these nine alleged protected activities. *See Vince Poscente Int'l, Inc.*, 2013 WL 1320511, at *4–5; *see also Paragon Gen. Contractors, Inc.*, 227 S.W.3d at 884. Second, Addante refers us to several portions of timelines that are contained in the record to substantiate these nine alleged protected activities. But as his brief acknowledges, the timelines are not evidence, and the timelines do not further refer us to competent evidence *in the record. See Miranda*, 133 S.W.3d 227-28; Appellee's Br. 31.

Addante asserts in his briefing that his "participation in EEOC proceedings" was protected activity, actionable under the TCHRA. The only EEOC proceeding contained in the record is his December 9, 2015 Charge of Discrimination, which occurred after the adverse employment actions—(i) denial of his reappointment and (ii) denial of his merit raise. Thus, the alleged unlawful employment practices occurred before the 2015 Charge of Discrimination. We must conclude that Addante's claim of retaliation cannot be based on this EEOC proceeding as the record indicates no causal link. *See* TEX. LABOR CODE ANN. § 21.055; *see, e.g.,*

---

[19] The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1.

*Allbritain v. Tex. Dep't of Ins.*, No. A-12-CA-431-SS, 2014 WL 272223, at *10 (W.D. Tex. Jan. 23, 2014) ("Because the termination occurred before the EEOC complaint, this "protected activity" could not possibly form the basis of a retaliation claim due to the lack of a causal link.").

Regarding Addante's argument that Addante's Letter to Musselman was a protected activity, the record shows Addante failed to raise that argument before the trial court. Addante's responses to UTD's plea to the jurisdiction neither attached, specifically identified, or expressly presented Addante's Letter to Musselman as a protected activity.[20] For the first time on appeal, Addante asserts this letter was a protected activity. However, as this argument was not presented to or adjudicated by the trial court, we cannot consider this new argument. *See* TEX. R. APP. 33.1; *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex. 1993).[21] Consequently, we conclude the sole protected activity Addante engaged in was his 2014 anonymous complaint. *See* TEX. LAB. CODE ANN. § 21.055(3).

---

[20] Indeed, Addante's Letter only appears once in the record, as attached to Wildenthal's declaration as context in support of his September 4, 2015 letter to Addante.

[21] In addressing summary judgment, the Texas Supreme Court explained:

> A motion must stand or fall on the grounds expressly presented in the motion. In determining whether grounds are expressly presented, reliance may not be placed on briefs or summary judgment evidence.

> Likewise, issues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion and are not expressly presented by mere reference to summary judgment evidence.

*McConnell,* 858 S.W.2d at 341 (citing *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979)).

## 2) Whether an Adverse Employment Action Occurred

As we have concluded above, (i) UTD's non-reappointment of Addante after the 2015–2016 academic year and (ii) UTD's denial of Addante's merit raise are the only materially adverse employment actions supported by the record. *See* TEX. LABOR CODE ANN. § 21.202.

## 3) Whether a Causal Link Existed Between the Protected Activity and the Adverse Action

Addante contends that his engagement in protected activity caused UTD's alleged adverse employment actions. We held in *Crutcher*:

> To satisfy the causation requirement for a prima facie case of retaliation, a plaintiff must establish that without the protected activity, the employer's prohibited conduct would not have occurred when it did. In other words, *the plaintiff must establish a "but for" causal nexus between her protected activity and the employer's prohibited conduct.*

410 S.W.3d at 494 (internal citations omitted, emphasis added).

First, Addante asserts that UTD's decisionmaker knew of his protected activities before UTD's decision to deny his reappointment and merit raise. An employer cannot retaliate against an employee if the employer's decisionmaker for the adverse employment decision did not know that the employee had engaged in protected activity at the time of the alleged retaliatory actions. *See Alamo Heights*, 544 S.W.3d at 788 (concluding a fact issue on causation did not exist where "there is no evidence [the decisionmaker] knew about [employee's alleged protected activity]") (citing *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999)

(concluding decisionmaker could not have retaliated based on protected activity of which it was unaware)); *see also Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 n.6 (5th Cir. 2003) ("If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity.").

Addante asserts that Wildenthal knew of his 2014 anonymous complaint before Wildenthal's decision to deny Addante's reappointment and merit raise. In support, Addante refers us to portions of his declarations, which are conclusory and otherwise provide no basis for his statements. Addante speculates that Mendoza's investigation notes—which were (i) reproduced in Addante's second declaration in an incomplete, edited format and (ii) contained handwritten initials to refer to parties and witnesses—caused his identity to be "known," but Addante states neither who at UTD knew Addante was the 2014 complainant nor how the initials identified him or any other witnesses. Such evidence is not legally sufficient. *See Vince Poscente Int'l, Inc.*, 2013 WL 1320511, at *4–5; *Paragon Gen. Contractors, Inc.*, 227 S.W.3d at 884; *see also Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) (discussing in an appeal of a summary judgment on an employment discrimination case that the "evidence must be more than merely subjective and speculative").

Addante next refers us to his timelines, which he admits are not evidence and which fail to refer us to further competent evidence in the record. Addante refers us

to a "Review Human Resources Investigation" report, which states that Mendoza met with Wildenthal regarding the complaint; however, neither that document nor any other evidence in the record suggests that Wildenthal was informed or knew that Addante was the complainant in the 2014 anonymous complaint.

The record shows, to the contrary, (i) that Mendoza and his investigation did not reveal Addante as the anonymous complainant at any time and (ii) that Wildenthal could not recall hearing of Addante before his January 2015 review. There is no competent evidence in the record that suggests anonymous complaints made through UTD's ethics and compliance hotline were not kept anonymous.

Nevertheless, Addante asserts in his briefing and asserted during oral argument that Wildenthal knew of Addante's "opposition" "because Dr. Wildenthal's personal assistant is Dr. Rugg's wife." However, there is no competent evidence in the record that indicates (i) Rugg's wife knew anything about Addante's 2014 anonymous complaint; (ii) Rugg's wife knew Addante was the complainant in the 2014 anonymous complaint; (iii) Rugg's wife served as Wildenthal's personal assistant[22]; or (iv) Rugg's wife discussed Addante's 2014 anonymous complaint with Wildenthal. Instead, the record shows Wildenthal first learned of Addante's 2014 anonymous complaint in November 2015, when Addante filed a separate

---

[22] The record is scant on this point and is limited solely to Addante's deposition testimony that (i) his "understanding" was that "Rugg's wife actually worked" at then-Provost Wildenthal's office and (ii) his testimony that "Dr. Rugg's wife or ex-wife or whatever their relationship was at the time, was also, to my knowledge, an assistant to Wildenthal in the provost office." The record contains no further basis or corroboration on this point.

complaint against Wildenthal—that is, Addante revealed he was the anonymous complainant to Wildenthal in November 2015. In light of the record before us, we must conclude that Addante adduced no evidence that Wildenthal, UTD's decisionmaker on the decision to deny Addante's reappointment and merit raise, knew of Addante's protected activity at the time of the alleged retaliatory actions.[23]

Even if we were to assume Wildenthal knew Addante was the anonymous complainant in 2014, the record shows no evidence that such knowledge was the "but–for" cause of Wildenthal's decision to deny Addante's reappointment and merit raise in 2015. *See Crutcher*, 410 S.W.3d at 494. To the contrary, the record shows that Wildenthal approved Addante to teach as a Senior Lecturer I at the BBS on or before July 3, 2014—almost three months after his April 10, 2014 complaint. Thus, even if we assume Wildenthal knew Addante was the anonymous complainant, Wildenthal nevertheless approved and hired Addante for further work (i) in a new position (ii) at a higher salary (iii) for the 2014 to 2015 academic school year. Assuming Wildenthal had knowledge of Addante as the complainant, it is not reasonable to infer that such knowledge was causally connected to Wildenthal's decisions in 2015 to deny Addante's reappointment and merit raise. *See id.*[24]

---

[23] Addante's briefing and oral argument presentation discussed whether anyone else was responsible as UTD's decisionmaker as to the denial of Addante's reappointment and merit raise—particularly because Addante was reappointed in August 2015 after Wildenthal's decision to not reappoint Addante from Spring of 2015. However, there is no evidence in the record to suggest anyone other than Wildenthal made the decision to deny Addante's reappointment and merit raise.

[24] In *Crutcher*, we held there was no causal connection between a former employee's protected activity of filing a discrimination suit and retraction of a governmental unit's recommendation for hire when the

–31–

Second, Addante asserts a temporal proximity existed between Addante's protected activity and the alleged adverse employment actions. Here, Addante's protected activity was the April 10, 2014 anonymous complaint. The record shows Wildenthal decided to deny Addante's reappointment and his merit raise in spring of 2015, and Addante learned of Wildenthal's decision when he received Wildenthal's September 4, 2015 letter—almost sixteen months after the April 10, 2014 anonymous complaint and over one month after Musselman's offer of work for the 2015-2016 year, which excluded Addante's merit raise.

"Temporal proximity is relevant to causation when it is 'very close.'" *Alamo Heights*, 544 S.W.3d at 790. In *Alamo Heights*, the Texas Supreme Court held a gap of eight months "is so long as to be of little, if any, probative value" in the context of a retaliation claim. *Id.* (citing *Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 286–87 (5th Cir. 2015) ("We have found a five month period between the protected activity and the adverse employment action insufficient to establish a causal link.")). The United States Supreme Court has discussed temporal proximity as follows:

> The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close," *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (C.A.10 2001). *See, e.g., Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (C.A.10 1997) (3–month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168,

---

governmental unit (i) learned of the prior discrimination suit, (ii) recommended the former employee for hire after learning of the discrimination suit, (iii) submitted a recommendation for hire to the HR Department, but (iv) later retracted the recommendation for hire. *Crutcher*, 410 S.W.3d at 494.

1174–1175 (C.A.7 1992) 4–month period insufficient). Action taken (as here) 20 months later suggests, by itself, no causality at all.

*Clark Cty. Sch. Dist.*, 532 U.S. at 274–75. Here, nearly sixteen months separated Addante's protected activity and UTD's adverse employment actions. The record does not contain competent evidence of any other retaliatory motive by UTD. We conclude Addante failed to establish a temporal proximity between his protected activity and the adverse employment actions.

Coupled with our conclusion that Wildenthal, as UTD's decisionmaker, had no knowledge of Addante's protected activity and after indulging every reasonable inference and resolving any doubts in favor of Addante, we must conclude Addante failed to establish the necessary causal link between Addante's protected activity and any adverse employment action. As a result, Addante has failed to establish a prima facie case of retaliation as required by the TCHRA. We sustain appellant's first issue.

## C. Whether Addante Met the Burden to Show His Participation in a Protected Activity Was the "But–For" Cause of Any Cause of Any of UTD's Employment Decisions

We have concluded that Addante failed to prove a prima facie case of retaliation because the evidence presented did not establish a causal link between his protected activity and UTD's employment decisions to deny his reappointment and merit raise. But, if we were to assume Addante had established a prima facie case of retaliation as required by the TCHRA, our inquiry would continue under the

*McDonnell Douglas* framework to determine (i) whether the employer "provide[d] evidence of a legitimate reason for the adverse action"[25] and (ii) whether, if the presumption is rebutted, the employee was able to "prove the adverse action would not have occurred 'but for' the protected activity." *Alamo Heights*, 544 S.W.3d at 782;[26] *Crutcher*, 410 S.W.3d at 493.

> i.    *Whether UTD Produced Evidence of Legitimate, Nonretaliatory Reasons for Its Adverse Employment Action*

The record contains substantive evidence of three legitimate, nonretaliatory reasons, as asserted by UTD, for its employment decisions in denying Addante's reappointment and merit raise:

> 1. Dr. Addante's exceptionally poor course and instructor scores in his student evaluations for the Fall 2014 semester;
> 2. Dr. Wildenthal's lack of support for hiring a former UTD postdoc who could not find a tenure track assistant professor position at another university to fill a UTD teaching faculty position;
> 3. Dr. Wildenthal's understanding that the dean would not reappoint Dr. Addante for the 2015–2016 academic year at his instruction.

Addante's briefing does not dispute those as the articulated reasons in the record for UTD's employment decisions. Assuming Addante established a prima facie case of retaliation as required by the TCHRA, we conclude UTD has rebutted the presumption of discrimination with evidence of legitimate, nondiscriminatory

---

[25] "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *McCoy*, 492 F.3d at 557.

[26] "If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *McCoy*, 492 F.3d at 557.

reasons for denying Addante's reappointment and merit raise. *See Alamo Heights*, 544 S.W.3d at 782. Our next step in our *McDonnell Douglas* inquiry is to determine whether Addante is able to "prove the adverse action would not have occurred 'but for' the protected activity." *Id.*

> ii. *Whether UTD's Adverse Actions Would Not Have Occurred But-For the Protected Activity*

"The but-for causation standard is significantly more difficult to prove than prima facie causation." *Alamo Heights*, 544 S.W.3d at 782 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351–52 (2013)). In *Apache Corporation v. Davis*, the Texas Supreme Court recently confirmed, following oral arguments herein, the but-for causation standard applies in an action alleging retaliation under § 21.055. 2021 WL 2603824, at *9 (Tex. June 25, 2021) (the "but-for causation standard applies in cases alleging retaliation for opposing discriminatory practices under Section 21.055. Federal caselaw, which our jurisprudence parallels, agrees.") (footnotes omitted); *see, e.g.*, *Macy's Retail Holdings, Inc. V. Benavides*, No. 05-19-01264-CV, 2021 WL 3573363, at *9 (Tex. App.—Dallas Aug. 12, 2021, no pet. h.); *City of Fort Worth v. Birchett*, No. 05-20-00265-CV, 2021 WL 3234349, at *5 (Tex. App.—Dallas July 29, 2021, no pet. h.). Addante responds that UTD's first reason—work performance—was pretext for the adverse employment actions.[27] In *Crutcher*,

---

[27] We addressed what constitutes "pretext" in *University of Texas Southwestern Medical Center v. Vitetta*:

–35–

we addressed this third step of the *McDonnell Douglas* framework in the context of

a retaliation claim:

> To raise a fact issue on the pretext element of a discrimination claim, the employee must present evidence proving the reasons stated by the employer were not its true reasons, but were a pretext for discrimination, or the reasons were not credible. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000); *Chandler*, 376 S.W.3d at 814. An employer is entitled to judgment as a matter of law if the record conclusively establishes some other, nondiscriminatory reason for the employer's decision, or if the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. *See Reeves*, 530 U.S. at 148, 120 S. Ct. 2097. The issue at the pretext stage is not whether the employer made an erroneous decision; it is whether the decision, even if incorrect, was the real reason for the employment determination. *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). The employer "is entitled to be unreasonable so long as it does not act with discriminatory animus." *Sandstad*, 309 F.3d at 899. If the employee intends to show the explanation is so unreasonable it must be pretextual, it is the employee's burden to proffer evidence creating a fact issue regarding reasonableness. *Id.*

*Crutcher*, 410 S.W.3d at 497.

---

Under *McDonnell Douglas*, once an employer produces a legitimate, nondiscriminatory explanation for its decision, an employee "must be afforded 'the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253). An employee can do this by showing that the employer's proffered reason is "unworthy of credence." *Id.* (quoting *Burdine*, 450 U.S. at 256); *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) ("An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action.")

No. 05-19-00105-CV, 2020 WL 5757393, at *19 (Tex. App.—Dallas Sept. 28, 2020, no pet.) (mem op.).

Addante refers us to several portions of his declarations, but, after we exclude the conclusory and otherwise incompetent portions of the declarations in accordance with our conclusions above, the remaining evidence is not sufficient to raise a fact issue that UTD's articulated legitimate and nonretaliatory reasons were false or pretexts for retaliation. *Alamo Heights*, 544 S.W.3d 785 (holding a plaintiff's burden responding to a jurisdictional challenge "mirror[s] that of a traditional summary judgment motion"); *see Vince Poscente Int'l, Inc.*, 2013 WL 1320511, at *4–5; *see also Paragon Gen. Contractors, Inc.*, 227 S.W.3d at 884.

As discussed, the record reflects that Wildenthal's decision to deny Addante's reappointment and to deny the merit raise stemmed from (i) the "unsatisfactory results recorded for [Addante's] teaching performance"; (ii) Wildenthal's lack of support for employment "provided more or less on compassionate grounds"; and (iii) Wildenthal's "understanding that [Addante's] appointment would not be renewed." Although Addante argues that UTD's evidence concerning its materially adverse decisions was false, he failed to produce any competent evidence to support this contention. Addante responds in briefing that "[t]he evidence of pretext is: Dr. Addante did not receive the lowest evaluations. Other employees received lower evaluations and were not disciplined or terminated." However, no evidence in the record suggests Wildenthal's decisions to deny Addante's reappointment and merit raise were tied solely to Addante having "the lowest evaluations." Furthermore, Addante provided no evidence to show the other employees with lower evaluations

were comparators in any sense.[28] Addante's generalized assertions do not raise a fact issue as to pretext. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004); *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997).

Addante "'must rebut each non-discriminatory or nonretaliatory reason articulated by the employer.'" *Crutcher*, 410 S.W.3d at 493 (quoting *McCoy*, 492 F.3d 551, 557). However, Addante offers no rebuttal to UTD's second and third asserted legitimate, nonretaliatory reasons for the adverse employment actions. Therefore, even assuming Addante met his burden to establish a prima facie case of retaliation, (i) the record shows legitimate, nonretaliatory reasons for UTD's decisions, and (ii) Addante failed to raise a fact issue on causation. *See Nassar*, 570 U.S. at 345–47, 351–52; *Alamo Heights*, 544 S.W.3d at 771, 782, 785; *see also Crutcher*, 410 S.W.3d at 492–98. Thus, our result would remain the same—dismissal for lack of subject-matter jurisdiction. *Alamo Heights*, 544 S.W.3d at 785 ("Permitting a *McDonnell Douglas* case to proceed to trial when the prima facie case has been rebutted and the plaintiff has not raised a fact issue on causation defies logic. More importantly, allowing a trial to proceed without evidence to sustain a

---

[28] "'Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct.'" *Alamo Heights*, 544 S.W.3d 755, 791 (Tex. 2018) (quoting *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005)).

claim is repugnant to the TCHRA's immunity waiver and contrary to the legitimate objectives of governmental immunity.") (footnote omitted).

## D. Whether The Trial Court Erred in Overruling UTD's Evidentiary Objections

In response to UTD's plea to the jurisdiction, Addante submitted three separate unsworn declarations, two timelines, and a collection of documents attached to his second unsworn declarations. *See* TEX. CIV. PRAC. & REM. § 132.001 (permitting unsworn declaration in lieu of affidavit required by statute, rule, or order). UTD timely objected to several portions of the declarations, the timelines, and the collected documents on the grounds of (i) legal conclusions, (ii) conclusory and speculative statements, (iii) references to primary sources that would constitute the best evidence of their contents, (iv) hearsay, and (v) unauthenticated documents and document excerpts. The trial court afforded Addante an opportunity to correct the defects raised in UTD's objections. The trial court's February 25, 2020 order denying UTD's plea to the jurisdiction further "ORDERED that all of Defendant's objections to the evidence submitted with Plaintiff's Response to Plea to the Jurisdiction are overruled."

As discussed above, Addante's briefing to our Court acknowledges the timelines are not evidence.[29] Even if we assume all of Addante's remaining evidence

---

[29] The record indicates Addante offered this clarification—that the timelines were not evidence—to the trial court in Plaintiff's Second Supplemental Response to Defendant's Plea to The Jurisdiction, filed on November 14, 2019.

raised in response to UTD's plea to the jurisdiction was admissible, Addante failed to raise a genuine issue of material fact on the causation element of his TCHRA claim that would survive a plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 221, 228; *Vince Poscente Int'l, Inc.*, 2013 WL 1320511, at \*4–5; *see also Paragon Gen. Contractors, Inc.*, 227 S.W.3d at 884. As we have sustained UTD's first issue, we need not reach this issue. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

## VII.  CONCLUSION

Having sustained UTD's first issue, we reverse the trial court's February 25, 2020 Order Denying Defendant's Plea to the Jurisdiction. We dismiss the case for lack of jurisdiction.

200376f.p05

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

Partida-Kipness J., dissenting.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THE UNIVERSITY OF TEXAS AT DALLAS, Appellant

No. 05-20-00376-CV      V.

RICHARD J. ADDANTE, PH.D., Appellee

On Appeal from the County Court at Law No. 1, Dallas County, Texas Trial Court Cause No. CC-17-03714-A.
Opinion delivered by Justice Pedersen, III. Justice Goldstein participating. Dissenting Opinion delivered by Justice Partida-Kipness.

In accordance with this Court's opinion of this date, the February 25, 2020 Order Denying Defendant's Plea to the Jurisdiction is **REVERSED** and this cause is **DISMISSED** for want of jurisdiction.

It is **ORDERED** that appellant THE UNIVERSITY OF TEXAS AT DALLAS recover its costs of this appeal from appellee RICHARD J. ADDANTE, PH.D..

Judgment entered this 8th day of September, 2021.